## Francis M. Woolley *et al.*

### *v.*

## Eliza J. Alexander *et al.*

*Filed at Ottawa May 14, 1881.*

1. Usury—*contract, so far as void for, can not be cured by subsequent legislation.* A contract made in 1856, so far as it provided for the payment of interest in excess of that allowed by law, was absolutely void, and could not be rendered valid and binding by any subsequent repeal of the law governing when it was entered into, but such contract, as to the principal and such rate of interest as was allowed by law, at the time of its execution, to be contracted for, was not void.

2. Same—*penalty may be released by repeal of the law.* A penalty for reserving usurious interest in a contract, until enforced, is subject to legislative control, and may be abolished wholly or in part.

3. SAME—*act of 1857 construed.* While the act of 1857, revising the law relating to interest, would seem to be an absolute repeal of the penalty imposed by the act of 1845, yet, taking the whole act together, it was intended, so far as then existing usurious contracts were concerned, as a mere reduction or a substitute for the penalty imposed by the act of 1845, extending simply to the entire interest reserved instead of three times that amount as provided in the latter act, and this it was competent for the legislature to do.

4. The legislature has no power to substitute one penalty for another except where that which is substituted is, in effect, a mere reduction or modification of the original penalty; and where a penalty is once released or abrogated, it ceases to be subject to legislative control.

5. SAME—*payments of, applied on principal.* Where usurious interest has been reserved, and the debtor makes payments to be applied on the note or other evidence of indebtedness, without specifying how they are to be applied, the law will apply them to that part of the indebtedness which the debtor is legally bound to pay; and when, in such case, the law imposes a penalty on account of usury, which operates as a forfeiture of the whole or a part of the interest reserved, and the debtor, while such penalty is in full force, and after the claim has matured, from time to time makes payments thereon, until they equal the amount of the claim less the amount of the forfeited interest, the whole debt will become actually extinct, and if the debt was secured by mortgage, a purchaser of the mortgaged premises will take them free of the mortgage lien, although the statute imposing the penalty may, after such extinguishment of the debt, be repealed; and any act or payment by the debtor after he has sold and conveyed the mortgaged property, can not affect the purchaser.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Whiteside county.

This was a bill by Francis M. Woolley and Hartson C. Woolley, executors of the last will of Benjamin F. Woolley, deceased, against Eliza J. Alexander, John W. Alexander, Harrison Alexander, Levice Metzler and Horace Alexander, heirs of Clement C. Alexander, deceased, to foreclose a mortgage given by Clement C. Alexander to Henry Keneagy, and by him transferred to Benjamin F. Woolley, deceased.

Messrs. C. J. & C. C. JOHNSON, for the appellants:

The defendants have failed to show, by a preponderance of evidence, that any usury was agreed to be paid for the use of the money.

The rule, as laid down by the Supreme Court of the United States and the courts of most of the States, is, that a party to a negotiable paper, having given it value and currency by the sanction of his name, should not afterwards be allowed to invalidate it by showing, upon his own testimony, that the consideration on which it was executed was illegal or invalid. *Bank of the U. S.* v. *Dunn,* 6 Pet. 51; *Bank of the Metropolis* v. *Jones,* 8 id. 12; *Henderson* v. *Anderson,* 8 How. 78; *Thayer* v. *Crossman,* 1 Metc. 416; *Chandler* v. *Morton,* 5 Greenlf. 374; 1 Greenlf. on Evidence, p. 385.

The defence of usury must be specially pleaded and strictly proved. *Hancock* v. *Hodgson,* 3 Scam. 329; *Newell* v. *Bureau County,* 37 Ill. 253.

Neither should there be any substantial variance between the plea of usury and the proof, or the allegation of usury in an answer and the proof. *Wise* v. *Twiss et al.* 54 Ill. 301; *Woodworth* v. *Huntoon,* 40 id. 132; *Seibert* v. *Bach,* 36 id. 195; *Davidson* v. *Johnson,* 31 id. 523; *Frank* v. *Morris,* 57 id. 138.

As to the right of a purchaser from the mortgagor to make the defence of usury against a foreclosure, counsel cited *Henderson* v. *Bellew,* 45 Ill. 322; *Valentine* v. *Fish,* 45 id. 462; *Pike* v. *Crist,* 62 id. 461; *Maher* v. *Lanfrom,* 86 id. 513.

The right to plead usury to a mortgage is a personal one, and peculiar to the mortgagor, and no person but he can make this defence without his consent, *express* or *implied.* Yet he may delegate that right to his grantee of the equity of redemption. The right, as we understand it, is in the nature of a license. A license does not extend to any one but the licensee. The death of either party, or a transfer by either, will revoke it. This right can not pass to the subse-

quent grantees, or descend to heirs.    3 Washb. on Real Prop. 395; Rawle on Covenants, 348; *Whiting* v. *Dinsmore,* 6 Cush. 124.

Messrs. BENNETT & GREEN, and Mr. J. E. McPHERRAN, for the appellees:

It is too late to raise the question of variance in this court for the first time. *City of Elgin* v. *Kimball,* 90 Ill. 356; *Driggers* v. *Bell,* 94 id. 223; *Thompson* v. *Hoagland,* 65 id. 310; *Stookey* v. *Stookey,* 89 id. 40; *Beckman* v. *Frost,* 18 Johns. 544; *Thayer* v. *Peck,* 93 Ill. 357; *Gilbert* v. *Maggard,* 1 Scam. 471.

That a subsequent purchaser from the mortgagor has the right to make the defence of usury, see *Green* v. *Kemp,* 13 Mass. 515; *Post* v. *Dart,* 8 Paige Ch. 639; *Dix* v. *Van Wyk,* 2 Hill, 522; *Jackson* v. *Dominick,* 14 Johns. 435; *De Wolf* v. *Johnson,* 10 Wheaton, 367; *Loyd* v. *Scott,* 4 Pet. 205; Ord on Usury, 131; *Mer. Ex. Bank* v. *Com. Warehouse Co.* 49 N. Y. 642; *Henderson* v. *Bellew,* 45 Ill. 322; *Valentine* v. *Fish,* 45 id. 462; *Pike* v. *Crist,* 62 id. 464; *Newman* v. *Kershaw,* 10 Wis. 275; 1 Jones on Mortgages, sec. 644, and cases cited; *Maher et al.* v. *Lanfrom et al.* 86 Ill. 513.

It is a well settled rule, of both common and civil law, that a debtor owing two debts to his creditor may direct upon which one of these any payment he may make shall be applied. If the debts are of equal nature, application should be made on that of longest standing. If the sum is intended and received at the time to apply on the debt, either in total or in partial satisfaction thereof, it has that effect, and no subsequent change of intention by the debtor can retract it without the consent of the interested parties, or to the prejudice of third parties. Willard's Equity, 97-101; *Prescott* v. *King,* 6 N. Y. 162; *Miller* v. *Montgomery,* 31 Ill. 350.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was a bill in chancery, to foreclose a mortgage executed by Clement C. Alexander to Henry Keneagy, on the 1st day of April, 1856, on a tract of land belonging to Alexander, situated in Whiteside county, consisting of several hundred acres, to secure a note of same date, made by Alexander to Keneagy, for $1000, payable in two years, with interest at the rate of ten per cent per annum, and the defences interposed were payment and usury.

There was a hearing upon the merits in the circuit court, resulting in a decree dismissing complainants' bill, and this decree was affirmed by the Appellate Court for the Second District, and appellants bring the case to this court by further appeal.

The evidence clearly shows, that while the mortgage note was given to secure a loan of, apparently, $1000, yet, in point of fact, all the money received on it by Alexander was $800, and the note was thus drawn to cover a usurious transaction, which, under the law as it then stood, operated as a forfeiture of three times the amount of interest reserved.

On the 6th of November, 1863, Alexander, for a valuable consideration, sold and conveyed, by warranty deed, 217 acres of the mortgaged premises to Elizabeth Tedford, through whom appellee Eliza Alexander claims—the other appellees having disclaimed all interest therein—and the controversy in this suit turns upon the right of appellants to foreclose the mortgage in question as to the 217 acres purchased by Elizabeth Tedford.

Benjamin F. Woolley, in 1867, purchased the note and mortgage of Keneagy, and appellants claim the purchase was made at the request of, and for the benefit of, Alexander,—that, in fact, the money advanced to make the purchase was but a loan from Woolley to Alexander; but this is distinctly denied by appellees. On the contrary, they claim that the principal of the note, and all just or legal interest thereon collectible by law, were, long before that time, fully paid.

Alexander and Woolley are both dead. The former died in November, 1867, and the latter in 1872, and the executors of Woolley filed the present bill on the 1st of March, 1877, lacking ten days of being twenty-one years after the making of the note and mortgage. Appellants admit there has been paid on the mortgage debt $1110.75, while appellees claim there was paid on it altogether, on the 13th of August, 1861, $1228.13, which was before the purchase of Mrs. Tedford, and this, they insist, fully discharged the note. There is no evidence, in our judgment, tending to show that at the time of the conveyance to Mrs. Tedford this mortgage was in any manner recognized as an existing incumbrance, much less to show an undertaking on her part to assume its payment.

The special contract between Alexander and Keneagy, fixing the rate of interest at the time of the loan at twenty per cent, so far as it provided for the payment of interest in excess of that allowed by law, was in violation of the express provisions of the statute, and was absolutely void, and consequently could not, by any subsequent repeal of the law which governed the contract at the time it was entered into, make it valid or binding upon the parties. The contract, to that extent, was not only invalid, but the lender was, by reason of it, obnoxious to a penalty of three times the amount of the interest reserved. This penalty, however, until enforced, was subject to legislative control. It was competent for the legislature to abolish the penalty by a repeal of the law which imposed it, and this was, in part, done by the act of 1857. This act was a general revision of the Interest law, by which the penalty for contracting for usurious interest was so modified as to extend to the whole of the interest reserved, and not to three times the interest, as provided for under the act of 1845, which was in force at the time the present contract was made. By the 4th section of the act of 1857 it is expressly provided, "that all laws in conflict with this law, and all laws providing for penalties for taking or contracting for more than the legal rate of interest, are hereby repealed."

While this provision, when considered alone, would seem to be an absolute repeal and abrogation of the penalty imposed by the act of 1845, yet, when it is viewed in connection with the other provisions of the act, and the manifest object of the legislature in changing the law, we are of opinion it was intended, so far as past transactions were concerned, as a mere reduction or modification of the penalty imposed by that act,— or, in other words, it was intended, so far as existing usurious contracts were concerned, as a substitute for the penalty imposed by the act of 1845; and this, we are of opinion, it was competent for the legislature to do. The power to release a penalty by a repeal, or partial repeal, of the statute imposing it, or by the enactment of a direct provision for that purpose, which is a power universally conceded, necessarily includes the power to release or abrogate a part of such penalty, and this power remains so long as any portion of the penalty exists and has not been enforced. But the legislature has no power to substitute one penalty for another except where that which is substituted is, as in the present case, in effect a mere reduction or modification of the original penalty, and where a penalty is once released or abrogated it ceases to be subject to legislative control.

Inasmuch as the act of 1849, which was in force at the time of the execution of the note in question, authorized the parties to contract for interest on the money actually loaned, at the rate of ten per cent per annum, we are of opinion that the contract, to that extent, was valid and binding on the mortgagor and those claiming under him; but as to all interest in excess of that, the contract was void.

That a contract may be invalid in part, and good and obligatory as to the residue, is a familiar doctrine of the law of contracts, and has frequently been recognized by this court.

Where usurious interest has been reserved, and the debtor makes payments to be applied on the note or other instrument providing for such usurious interest, without specifying

how they are to be applied, the law will apply them to that part of the indebtedness which the debtor is legally bound to pay, and not to that which he is under no legal obligation to discharge; and where, in such case, the law imposes a penalty on account of reserving unlawful interest, which operates as a forfeiture of the whole or a part of the interest reserved, and the debtor, while such penalty is in full force, and after the claim has matured, from time to time makes payments thereon until such payments are equal to the amount of the claim, less the amount of the forfeited interest, the debt will thereupon become actually extinct, and if such claim was secured by mortgage, a purchaser of the mortgaged premises after such payments will take them free and discharged of the mortgage lien. The creditor can not, under such circumstances, lie by, waiting for years for the legislature to pass some general act by which the penalty will be released, and then proceed against the mortgaged premises in the hands of a purchaser who has, in good faith, paid full value therefor, and recover upon a claim to which there was, before such repeal, a complete defence.

In the view we take of this case, we deem it unnecessary to consider the act of 1867, or the construction which it should receive. Under the rule above laid down, we are of opinion the weight of evidence shows that before the conveyance to Mrs. Tedford, Alexander had fully paid all of the mortgage debt that was recoverable by law, and the mere fact that he and his legal representatives may have made payments after that time, can not at all affect the rights of those claiming under her. The conclusion here reached is believed to be in harmony with well recognized principles of law and the previous decisions of this court. *Farwell* v. *Meyer et al.* 35 Ill. 40; *Pike* v. *Crist et al.* 62 id. 461; *Parmelee et al.* v. *Lawrence,* 44 id. 406; *same* v. *same,* 48 id. 331.

It is claimed, however, that the purchase of this claim by Woolley from Keneagy was made at the instance of Alexander, and that the money advanced by the latter to make it

was but a mere loan to the latter. We do not think the weight of the evidence sustains this view; but even if it did, we are unable to see how Mrs. Alexander can be affected by that fact, for Woolley's purchase of the claim was some four years after Alexander's conveyance to Mrs. Tedford, through whom Mrs. Alexander claims. If Alexander, before the conveyance to Mrs. Tedford, paid off all of Keneagy's claim that was then collectible by law, as we have already found he did, Alexander could not, by any subsequent act of his subject the premises to any further liability on account of that claim. This proposition is too clear to admit even of serious consideration.

Upon the whole, we think substantial justice has been done in the case, and the decree of the Appellate Court will, therefore, be affirmed.

*Decree affirmed.*